R. H. OGBURN *et al v.* J. T. DUNLAP *et al.*

CHANCERY PLEADINGS AND PRACTICE. *Consolidated causes. Appeal.* An
order of the chancellor, made upon the final hearing of independent
causes, directing the causes to be consolidated and heard together,
will leave each case to be tried upon its own pleadings, proceedings
and proof, and an appeal by the complainants in one of the bills will
only bring up their case, leaving the other causes in the court below,
and the decree as to them in full force.

FROM HENRY.

Appeal from the Chancery Court at Paris. John
Somers, Ch.

W. A. DUNLAP and ADEN & FRYER for complain-
ants.

GREER & WILLIAMS for defendants.

Ogburn *v.* Dunlap.

COOPER, J., delivered the opinion of the court.

On January 6, 1869, James T. Dunlap sold and conveyed to James T. Dunlap, Jr., his son, a tract of land in Henry county, "in consideration of $3,000 in three equal annual instalments, with interest from date." The purchaser executed to his father his three notes accordingly. The deed conveying the land was absolute, without reserving any lien for the payment of the purchase notes, but showing the consideration as above.

On June 1, 1869, James T. Dunlap, Jr., conveyed the same land to W. D. Lannom, in trust, to secure a note of James T. Dunlap, Jr., of even date, payable one year thereafter to James H. Harrell, for $720. This note was assigned to W. A. Tharpe, and he, on February 24, 1875, filed the first of the bills in this record against James T. Dunlap, Jr., and, by amendment, against the heirs of Lannom, who had died, to enforce the trust assignment for the payment of the debt.

On March 21, 1870, James T. Dunlap, the father, assigned to James R. Allen the second and third notes of James T. Dunlap, Jr., given for the land, waiving demand and notice. On the same day, James T. Dunlap, Jr., conveyed the land, for which the notes were given, to James R. Allen, in mortgage, to secure the payment of the two notes thus assigned to him by James T. Dunlap, Sr., subject to the prior deed to Harrell. On February 24, 1875, John A. Allen, and others, the personal representatives and heirs of James

R. Allen, who had died, filed the second of the bills in this record, against the two Dunlaps, James H. Harrell, and three of the Allen heirs, who were infants, and the guardian of two of them. The object of this bill was to foreclose the mortgage made by James T. Dunlap, Jr., to James R. Allen, subject to the Harrell trust deed, so far as it secured the purchase note of James T. Dunlap, Jr., falling due three years after date, this note belonging to Allen's estate. The other note seems to have gone back into the hands of James R. Dunlap, Sr.

On January 10, 1871, James T. Dunlap, Sr., assigned the first and second of his son's notes to his two daughters, Sarah A. and Ellen J. Dunlap, "together with the lien." On May 20, 1876, R. H. Ogburn and wife, Ellen J., formerly Ellen J. Dunlap, and Sarah A. Dunlap filed the third of the bills in this record against the two Dunlaps, father and son, to enforce the original vendor's lien or equity on the land sold by the father to the son for the unpaid purchase money. This bill simply states that Wm. A. Tharpe had filed a bill to enforce a subsequent deed of trust, and that John A. Allen, and others, who had filed another bill to enforce a still subsequent mortgage. The complainants ask that this bill be heard with those causes, but without making the complainants in those suits parties to the bill.

These three suits were all proceeded with separately, and prepared for hearing. They were, however, heard together, the final decree reciting that "these causes came on to be heard upon bills, answers, exhibits, *pro*

*confesso* and proof; whereupon, it was ordered by the court, that said causes be consolidated and heard together, which was accordingly done." The chancellor gave the complainants in each bill a recovery against James T. Dunlap, Jr., for the debt due the complainants respectively, and ordered the land to be sold in satisfaction thereof, the proceeds of sale to be first applied to the payment of the Tharpe debt; next, to the payment of the Allen debt; and any surplus to the complainants in the last bill. These latter complainants have brought the record into this court by writ of error.

The appellants, Ogburn and wife, and Sarah A. Dunlap, are only parties to their own bill, the defendants to which are the two Dunlaps. It is obvious, therefore, that the writ of error only brings up the bill of the appellants, and the proceedings had therein, unless the chancellor's order of consolidation changes the result. But this court has repeatedly held that a mere order of consolidation of two or more causes cannot change the rules of equity pleading in the rights of the parties. These rights must still turn upon the pleadings, proof and proceedings in the respective causes: *Brevard* v. *Summers,* 2 Heis., 105; *Lefland* v. *Coward,* 12 Heis., 546; *Mowry* v. *Davenport,* 6 Lea, 80; *Estill* v. *Decherd,* 4 Baxt., 515; *Masson* v. *Anderson,* 3 Baxt., 290. And it is very doubtful whether the chancellor has any powers to interfere with the rights of the parties, *in invitum,* by an order directing the consolidation of independent suits of purely equitable cognizance: *Ogden* v. *Knight,* 3 Tenn. Ch., 409. The

reason is, that in order to give a court of chancery jurisdiction in any cause, it must have the parties before it by proper process, or appearance, and formal pleadings presenting the issues to be tried between the parties: *Randolph* v. *Merchants National Bank*, MS., opinion at this term. For the same reason, the court cannot permit new parties to come in as defendants against the wishes of the complainants: *Comfort* v. *McTeer*, 7 Lea, 652. By the very nature of a court of equity, there must be orderly pleadings between litigant parties, fairly embodying the facts upon which the court is called, in favor of one party, to effect the conscience of another.

The case before us is a striking example of the necessity of adhering to these rules. The appellants seek to have the notes held by them declared to have the first lien on the land in controversy, because of the vendor's equity for the unpaid purchase money, no lien for the security of the purchase notes having been retained on the face of the deed. But the vendor's equity may be waived, and no issue has been made between the parties in interest to authorize the introduction of evidence on the point. The bill of the appellants says that the notes held by them were assigned to them by James T. Dunlap "for a *bona fide* consideration." Such a consideration might be love and affection. The note to Harrell of $720, and the trust deed to secure it, was made on June 1, 1869. In their joint answer to the Allen bill, the two James T. Dunlaps say that this note was given for money loaned by Harrell to James T. Dunlap, Jr. And on

the first note of James T. Dunlap, Jr., to his father, and which was assigned by him to the appelants, there is a credit of the date of June 1, 1869, of $720, the exact amount, and of the same date of the Harrell note. If, now, the issue of the waiver of the vendor's equity were made, it might be shown that the money thus obtained was for the accommodation of the vendor, and that he was a party to the arrangement between James T. Dunlap, Jr., and Harrell. In such a case, it would be difficult to resist the inference that the vendor intended to waive his equity in favor of Harrell.

Moreover, in the Allen mortgage the priority of the Harrell debt is again recognized. That mortgage was made on the same day that the father assigned the two purchase notes to Allen, and, it may fairly be inferred, as a part of the transaction, and for the accommodation of the father. In that event, it would be difficult to resist the conclusion that it was intended to waive the vendor's equity in favor of Allen, and of course in favor of Harrell. The equity once waived would be gone forever.

If these facts could be looked to, the chancellor's decree would probably be found correct. But in determining the rights of the appellants, we cannot look outside of the pleadings, proof and proceedings in their own suit, to which they and the Dunlaps alone are parties. In this view, the decree of the chancellor, in so far as it gives the complainants a judgment against James T. Dunlap, Jr., on his purchase notes with costs, and order a sale of the land in satisfaction

thereof, under the vendor's lien, is correct. The decree is erroneous in undertaking to declare the priorities between these complainants and the complainants in the other suits.

The decree below will be modified accordingly. But inasmuch as the appellants have gained nothing by the appeal as against the defendants to their bill, they will pay the costs of this court. The other cases are not brought up by the appeal, and the decrees therein below, as between the parties to the suits, will remain unaffected by the decree in this court.